Matthew Roy **NIELSEN**, petitioner, Appellant,

v.

**2003 HONDA ACCORD, Respondent.**

No. A12–217.

Court of Appeals of Minnesota.

Sept. 10, 2012.

Review Granted Nov. 27, 2012.

Kirk M. Anderson, Anderson & McCormick, P.A., Minneapolis, MN, for appellant.

Michael O. Freeman, Hennepin County Attorney, Daniel P. Rogan, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; ROSS, Judge; and MUEHLBERG, Judge.*

## OPINION

ROSS, Judge.

Matthew Nielsen pleaded guilty to first-degree driving while intoxicated and the prosecuting authority notified Nielsen of its intent to exercise its administrative forfeiture authority to take the Honda Accord that Nielsen drove when he committed the offense. Nielsen successfully opposed the forfeiture in conciliation court, which deemed the car exempt from forfeiture based on the supreme court's holding in *Torgelson v. Real Property* that the homesteads of drug felons are exempt from drug-asset forfeiture. The state appealed to the district court, which rejected Nielsen's argument that *Torgelson* applies to limit forfeiture of vehicles used in specified drunk driving offenses. The district court is correct; *Torgelson* does not apply here and neither the Minnesota constitutional mandate embodied in article I, section 12, nor the statutory personal-property exemption embodied in Minnesota Statutes section 550.37 (2010), precludes the civil forfeiture of vehicles under Minnesota Statutes section 169A.63 (2010). We therefore affirm.

## FACTS

The facts are not disputed. In April 2011 Matthew Nielsen drove his 2003 Honda Accord the wrong way on a one-way street, capturing the attention of a Minne-

apolis police officer. The officer stopped and arrested Nielsen, who appeared to be drunk and who confirmed that fact with a urine sample revealing a blood alcohol concentration of 0.23. Hennepin County charged Nielsen with two counts of first-degree DWI, and he pleaded guilty. *See* Minn.Stat. §§ 169A.20, subds. 1(1)–(2), 3, 169A.24, subds. 1(1), 2, 169A.275, 169A.276 (2010). This was Nielsen's fourth DWI conviction in two years.

The police department seized Nielsen's car and issued him notice of its intent to keep it through administrative forfeiture authorized by Minnesota Statutes section 169A.63 (2010). Nielsen challenged the forfeiture in conciliation court, which decided that the department could not retain the car through forfeiture because its value rendered it exempt from "attachment, garnishment, or sale on any final process issued from any court" under Minnesota Statutes section 550.37, subdivision 12a (2010), ostensibly following the supreme court's holding in *Torgelson v. Real Property Known as 17138 880th Avenue, Renville County*, 749 N.W.2d 24 (Minn.2008). The state removed the case to the district court, which did not read *Torgelson* as requiring that the motor-vehicle exemption statute restricts alcohol-related vehicle forfeitures under section 169A.63.

Nielsen appeals.

## ISSUE

Does the statutory exemption against creditor claims for motor vehicles, Minnesota Statutes section 550.37, subdivision 12a, preclude or limit a prosecuting authority from applying the motor-vehicle forfeiture provision to take the car of a repeat drunk driver under section 169A.63?

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## ANALYSIS

 Nielsen argues that, under the Minnesota Constitution and the motor-vehicle exemption statute, the state cannot acquire his car through forfeiture or that if it can, it must pay him the value of the forfeited car. We review questions of law, including questions of statutory interpretation and constitutional issues, de novo. *State v. Bussmann,* 741 N.W.2d 79, 82 (Minn.2007). Nielsen rests his argument on the supreme court's decision in *Torgelson v. Real Property Known as 17138 880th Avenue, Renville County,* 749 N.W.2d 24 (Minn.2008). The *Torgelson* court held that the constitution prohibits drug-asset forfeiture of drug felons' homesteads. 749 N.W.2d at 30. Nielsen contends that *Torgelson*'s holding applies to prohibit or limit forfeiture of a repeat drunk driver's vehicle. We are not convinced.

Nielsen reads too much into *Torgelson*'s holding. *Torgelson* first highlighted the state's Bill of Rights provision requiring the legislature to exempt a reasonable amount of property from seizure for the payment of liabilities. 749 N.W.2d at 26. "A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law." Minn. Const. art. I, § 12. It then recognized that the legislature followed this mandate by enacting the homestead exemption, which states:

The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants and as is provided in section 550.175.

Minn.Stat. § 510.01 (2006). And it held that the real-property forfeiture authority of section 609.5311 is restricted by this homestead exemption and that drug-asset homestead forfeiture is therefore unconstitutional under article I, section 12. *Torgelson,* 749 N.W.2d at 29.

Nielsen argues that this court must apply the vehicle-exemption provision of section 550.37 to the vehicle forfeiture authority of section 169A.63 for repeat drunk driving offenses in the same way that the *Torgelson* court applied the homestead-exemption provision of section 510.01 to the real-property forfeiture authority of section 609.5311 for drug felonies. The vehicle-exemption statute provides that a motor vehicle not exceeding $4,400 in value under the current dollar amount adjustment, *is exempt* from "attachment, garnishment, or sale on any final process." Minn.Stat. 550.37, subds. 4a, 12a (2010). Implicit in Nielsen's argument is the premise that every type of property that the legislature exempts from the payment of any debt or liability is "property" required to be exempted under article I, section 12 of the constitution and, therefore, *constitutionally* exempted from forfeiture under *Torgelson.*

We do not read *Torgelson* so broadly. In deeming the drug-asset forfeiture of homesteads unconstitutional, the *Torgelson* court relied heavily on the law's special and long-settled heightened protection of homesteads. It explained that because "homestead exemptions are to be construed liberally[,] ... the constitutional ['debt or liability'] language is broad enough to encompass forfeitures." 749

N.W.2d at 27. It observed that "[i]t was originally proposed that the Minnesota Constitution contain a homestead exemption with a specific dollar limit," but that the constitutional framers opted instead for an open provision that does not precisely define the limits of the homestead exemption. *Id.* at 27–28 (quotation omitted). It discussed at length the reasoning of other state courts and said that it was persuaded by those courts "that have held that state forfeiture laws violate statutory or constitutional homestead exemptions." *Id.* at 28. It repeated its own language that "[w]e construe our homestead law as relating to all debtors," and that this broad protection includes the homesteads of even "the vicious, the criminal, or the immoral." *Id.* at 29 (quotation omitted). *Torgelson* cannot be understood without regard to its substantial emphasis on the sanctity of homesteads and the unique protections afforded to them.

We recognize that the legislature enacted the vehicle-exemption provision in response to the same constitutional exemption mandate that precipitated the homestead exemption. *See Moyer v. Int'l State Bank of Int'l Falls, Minn.,* 404 N.W.2d 274, 276 (Minn.1987) ("Since 1858 the mandate of article I, section 12 of the Minnesota Constitution ... has been carried out by section 550.37 or its predecessors."). And we also observe that the predecessor statute to section 550.37 was first enacted in 1858 and exempted the arguably equivalent transportation of the day—a horse and cart, wagon, or sleigh. *See* 1858 Minn. Laws ch. 35, § 8, at 91. But this does not persuade us that *each* exemption the legislature chose to create was required by the constitution so that the rationale of *Torgelson* applies to it.

Nothing in *Torgelson* indicates that the supreme court was painting with the broad brush that Nielsen asks us to use, extending the constitutional protection of "property" to invalidate or severely limit the legislature's authority to allow prosecuting authorities to pursue civil forfeiture against *any* property, such as motor vehicles that were used to commit certain crimes. The argument would be persuasive if, for example, article I, section 12, expressly required the legislature to exempt vehicles from forfeiture actions. But nothing in the article or its history suggests that requirement. And we have no other reason to conclude that the legislature was constitutionally bound to exempt motor vehicles (of any value) from forfeiture in the same way that *Torgelson* presupposes that the legislature was bound to exempt homesteads. Although some of the various types of personal property listed in section 550.37, like motor vehicles, have some connection to property that was historically protected from attachment, like horse-drawn conveyances, they do not have the deep roots and unbroken, elevated protection that homesteads have always enjoyed, as emphasized by *Torgelson.* For example, the exemption for "motor vehicles" was not added until 1980, 1980 Minn. Laws ch. 550, § 2 at 740, long after motor vehicles replaced horse-drawn conveyances as primary transportation.

For these reasons we reject Nielsen's threshold argument, which is that "[because] [t]he constitutional protections apply to all property that the [l]egislature exempted from seizure or sale[,] ... the motor vehicle exemption is entitled to the same protections as a homestead." We hold instead that the constitutionally mandated homestead protection recognized in *Torgelson* does not prevent or impose value limits on the administrative forfeiture of vehicles used by drunk drivers.

Nielsen also argues that, aside from the constitutional issue, construing the vehicle-exemption and DWI-forfeiture statutes to-

gether requires us to hold that the exemption statute is an exception to the vehicle forfeiture statute. So read, he argues, the statutes either prohibit the state from taking his car by forfeiture or require the state to repay him for the value of his car after taking it by by forfeiture. We do not believe he accurately interprets the statutes.

The two statutes do not expressly or implicitly address the same type of proceeding. The personal property exemptions of section 550.37 exempt certain property from being "liable to attachment, garnishment, or sale on any final process issued from any court." Minn.Stat. § 550.37, subd. 1(2010). And it identifies motor vehicles valued at less than $4,400 as one type of exempt personal property. *Id.*, subds. 4a, 12a(2010). The vehicle forfeiture statute, by contrast, contemplates the forfeiture of vehicles used in certain drunk-driving offenses without regard to vehicle value and without any implication that the acting authority is bound to reimburse the offending vehicle owners. *See* Minn.Stat. § 169A.63, subd. 6(2010). It provides that a drunk driver's motor vehicle is subject to forfeiture when it is used to commit a designated offense, *id.*, subd. 8; it does not limit forfeiture to a vehicle of any minimum value and expressly allows for forfeiture of motor vehicles that are valued even below $500, *id.*, subd. 8(d); it immediately vests "*[a]ll* right, title, and interest" in the vehicle subject to forfeiture "in the appropriate agency," *id.*, subd. 3; and then it requires the forfeiting agency either to keep and use the vehicle or to use "70 percent of the proceeds" in its DWI-related operations and distribute the remaining "30 percent of the ... proceeds" to the prosecuting authority for prosecutorial purposes, *id.*, subd. 10. For at least two reasons, the two sections cannot be read as Nielsen argues. First, the forfeiture statute's express allowance for forfeiture of even a $500 car is meaningless if the exemption statute prohibits forfeitures of vehicles valued below $4,400. Second, if Nielsen is correct that the exemption statute allows the state to take a car by forfeiture but requires the state to then reimburse the owner the after-sale exemption amount up to $4,400, then the forfeiture statute's requirement that the forfeiture sale proceeds be divided exactly 70–30 between the acting law-enforcement and prosecutorial agencies could *never* be followed.

■ We presume that the legislature has existing statutes in mind when it passes new laws. *Minneapolis E. Ry. v. City of Minneapolis*, 247 Minn. 413, 418, 77 N.W.2d 425, 428 (1956). And where, as here, we are asked to reconcile the provisions of supposedly conflicting laws passed by different sessions of the legislature, the newer law prevails over the older. Minn. Stat. § 645.26, subd. 4 (2010). As noted, the predecessor statute to section 550.37 has existed since 1858, and motor vehicles have been included in the list of personal-property exemptions since 1980. Aware of those exemptions, the legislature passed the vehicle forfeiture law in 1992. 1992 Minn. Laws ch. 570, § 15 at 1953–56. Because the legislature knew of the motor-vehicle exemption in section 550.37 when it enacted the vehicle forfeiture law, it could not have intended for the exemption statute to prevent the operation of the most essential provisions of the vehicle forfeiture statute.

## DECISION

The constitution does not require the motor-vehicle exemption provision in section 550.37 to prevent or limit the forfeiture of motor vehicles, and the statutory provision does not, by its terms, restrict the operation of the forfeiture provision of

169A.63 or require the forfeiting authority to reimburse the owner the value of the vehicle forfeited to the state because of his drunk driving.

**Affirmed.**